*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| BARRY H., | ) | |
| | ) | Supreme Court No. S-16415 |
| Appellant, | ) | |
| | ) | Superior Court No. 2KB-13-06/08/09CN |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, DEPARTMENT | ) | |
| OF HEALTH & SOCIAL SERVICES, | ) | |
| OFFICE OF CHILDREN'S SERVICES, | ) | |
| | ) | No. 7188 – August 11, 2017 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Second Judicial District, Kotzebue, Paul A. Roetman, Judge.

Appearances: J. Adam Bartlett, Anchorage, for Appellant. Joanne M. Grace, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

CARNEY, Justice.

## I.     INTRODUCTION

The father in a Child in Need of Aid (CINA) proceeding sought to dismiss his court-appointed counsel and represent himself. The trial court found that the father could not conduct himself in a rational and coherent manner sufficient to allow him to

proceed without an attorney and denied his request. After a six-day trial the court terminated his parental rights to three of his children. The father appeals, arguing that the trial court erroneously deprived him of his right to represent himself during the CINA proceeding. We affirm the trial court's decision.

## II.     FACTS AND PROCEEDINGS

Barry[1] and his wife, Donna, live in Kiana. The Office of Children's Services (OCS) took emergency custody of four of their children in February 2013 after receiving reports that Barry was physically and sexually abusing members of his family.[2] At their initial hearings both Barry and Donna agreed to have counsel appointed for them.

In April 2013 Barry submitted a document to the court entitled "Opposition Response to Claims and Demand to show Apparent Authority and Actual Authority with Affidavit in Support." He did not submit it through his attorney. He asserted that he was participating in the case by "special appearance and only as a courtesy, **objecting** to STATE OF ALASKA subject matter jurisdiction, and personal jurisdiction over [himself, as a] natural Inupiaq man, vessels for Gods living souls." (Emphasis in original.) He also asked to be relieved of counsel, claiming that the Public Defender Agency was "restrained" in its advocacy "by a power seemingly higher, such as, Alaska Bar Association, that might be administering to it's [sic] members over [his] free will choice of what should be made into [his] record of truths." He also demanded that the court "prove up apparent authority, and actual authority first, before we [proceed] any

---

[1]     We use pseudonyms to protect the family's privacy.

[2]     One of the children turned 18 and was released from OCS custody before the final termination hearing.

further." At a scheduling conference later in the month, the court indicated that it would not take action on Barry's filing because it had not been filed by his attorney.

Barry and his wife appeared by telephone at the next hearing the following month. They appeared by telephone at all subsequent hearings as well. He again asserted that he and his wife were "here on special appearance and as a courtesy." When the court asked about his desire to dismiss his attorney, Barry confirmed that he wanted to represent himself, reiterated that he was there "by special appearance," and again challenged the court's "actual authority [and apparent] authority." When the court explained that it would have to ask him some questions to determine whether he could represent himself, Barry repeated, "We're here on special appearance and as a courtesy. . . . We'd like that from here on we — we have no business with you."

The court interpreted Barry's "authority" statements as a challenge to its jurisdiction. It carefully explained that the Alaska Constitution and the legislature had established the court system and outlined its authority.[3] The court then asked Barry if he was willing to answer questions to help it make a decision regarding Barry's representation. In response Barry "object[ed]," telling the court, "You need to answer my opposition before you can even proceed in this matter." The court repeated its question, and Barry repeated his "special appearance" assertion and "object[ed] to the State of Alaska subject matter jurisdiction and personal jurisdiction over [his] natural Inupiaq family." The court again asked Barry to answer its questions, but received no audible response. Because Barry did not answer, the court noted that it had no information either supporting his request or not, and moved on to other issues.

The rest of Barry's appearances leading up to his termination trial were similar. He objected to the court's authority again at the adjudication hearing in June.

---

[3]     *See* Alaska Const. art. IV, §§ 1, 3; AS 22.10.020.

At a permanency hearing in 2014 Barry continued to insist that the court and OCS "might not have . . . the actual authority and apparent authority to do what they're doing here," and he refused to answer the court when it asked him why he wanted to dismiss his attorney. Instead he told the court that "the State of Alaska is, quote, a private company, a corporation, not a proper seat of government." The hearing was continued until later in the month. When it resumed, Barry argued at such length against the court's authority that the court had to threaten to disconnect him before proceedings could resume as normal. Shortly afterward, the guardian ad litem filed a motion to require Barry and Donna to appear in person for any future court hearings; he alleged that Barry had been broadcasting the confidential proceedings locally over the VHF radio.[4] The court declined to order that Barry and Donna personally appear, but did require that their future participation by telephone be supervised by the local Village Public Safety Officer (VPSO).

In April 2015 Barry's attorney moved to withdraw, citing Barry's right and desire to represent himself. The court was skeptical of the request. It noted that our decision in *McCracken v. State*[5] required parties to "present[] themselves in a way that is rational and coherent" in order to be permitted to represent themselves. Despite its reservations, the court agreed to hold a hearing on Barry's request.

Barry appeared by telephone and immediately repeated his objections to the court's authority and asserted that he was making a special appearance out of courtesy.

---

[4] *See* AS 47.10.070(c); CINA Rule 3(f) (establishing confidentiality rules for CINA hearings). It is not uncommon in rural Alaska, where telephone service has often been unreliable, for people to communicate over VHF radio. *See* OFFICE OF THE GOVERNOR, LETTER TO NATIONAL TELECOMMUNICATIONS AND INFORMATION ADMINISTRATION (Nov. 25, 2014), available at https://www.ntia.doc.gov/files/ntia/state_of_alaska.pdf.

[5] 518 P.2d 85 (Alaska 1974).

He demanded that the court "accept [his] affidavit into the court record, the opposition and demand to show apparent and actual authority for signature authority." The court once again explained that it had to ask him questions to determine whether to dismiss his attorney and allow him to represent himself. Barry again asserted that the court lacked authority over him and his family and asked the judge to recuse himself.

The court then denied his request to represent himself. It noted that in other cases before it Barry had been able to answer questions, but that in this proceeding it had "been very difficult to determine what [Barry] wants other than the challenges to . . . the court's jurisdiction, challenges to the court's authority." The court concluded:

> I don't believe that based on the filings that he's made pro se, based on the statements that he's said even today which are statements that the court has heard before, that [Barry] is capable of presenting his case in a manner that is rational and coherent and consistent with the law that governs the case, primarily because he just doesn't believe that that law applies to him. And . . . the court doesn't agree with that, but I understand [Barry], what he's saying, and I appreciate that he is heartfelt and passionate about those beliefs. And I respect them, even though I don't agree with them.

The court encouraged Barry to move past his jurisdictional objections and to consult with his attorney. Instead Barry continued interrupting with objections to the court's authority. The hearing concluded with Barry exclaiming, "You're all fired," demanding that his attorney be appointed as his "trustee," and accusing the court of "practicing law from the bench."

The termination trial began in February 2016. Barry once again questioned the state's authority, and during one witness's testimony he objected so vigorously that the court temporarily muted his telephone connection. After the VPSO revealed that Barry had been surreptitiously recording the proceedings, Barry launched into an extended argument with the court about his "right" to do so. Throughout OCS's case he

interrupted witnesses to argue with them. Although he managed to cooperate with his attorney through his own direct examination, he retreated to his usual arguments under OCS's cross examination. At one point OCS referred Barry to a letter he had written to the court, in which he warned that judges who took action against him would be "personally liable" under "[a] new legal system of genuine fairness." Barry insisted on reading the entire letter into the record, despite OCS's insistence that it was not asking him to read the letter. At another point he asked the court if he could "charge a counterclaim here of fraud" against OCS. And when OCS began to question him about his criminal record, he declared the Alaska judicial system to be a "slave-created court," announced his intent to remain silent, and left the building from which he was giving his testimony by telephone until his attorney coaxed him back in.

The court ultimately terminated Barry's parental rights to the children at issue. Barry appeals.

## III.   DISCUSSION

Barry argues that parents in CINA proceedings have a constitutional right to represent themselves and that the trial court erred in refusing to dismiss his counsel once he invoked this right for himself. Regardless of whether the constitution guarantees such a right,[6] we find no error in the trial court's decision.

### A.   We Do Not Decide Whether The Constitution Guarantees Parents The Right To Represent Themselves In A CINA Proceeding.

The right to self-representation in CINA cases (or other civil matters) has no specific support in the constitutions of either Alaska or the United States. But both constitutions guarantee a criminal defendant's right "to have the assistance of counsel

---

[6]    We review matters of constitutional and statutory interpretation de novo. *See Alaskans for a Common Language v. Kritz*, 170 P.3d 183, 189 (Alaska 2007) (citations omitted).

for his defense."[7]  The United States Supreme Court has held that criminal defendants therefore also have the right to decline to be represented by counsel in criminal trials.[8] In *McCracken v. State* we held that the right to self-representation under the Alaska Constitution extends to proceedings for post-conviction relief, which are civil proceedings.[9]  We also clarified that the right to represent oneself is not absolute:

> In order to prevent a perversion of the judicial process, the trial judge should first ascertain whether a prisoner is capable of presenting his allegations in a rational and coherent manner before allowing him to proceed pro se.  Second, the trial judge should satisfy himself that the prisoner understands precisely what he is giving up by declining the assistance of counsel. . . . Finally, the trial judge should determine that the prisoner is willing to conduct himself with at least a modicum of courtroom decorum.[10]

Although we have not previously addressed whether there is a right to self-representation in CINA matters,[11] the CINA rules themselves provide that a court "shall

---

[7]     Alaska Const. art. I, § 11.  *See* U.S. Const. amend. VI.

[8]     *Faretta v. California*, 422 U.S. 806, 819 (1975).

[9]     518 P.2d 85, 90-91 (Alaska 1974).  Post-conviction relief cases are civil proceedings brought to challenge an underlying conviction or sentence on constitutional, jurisdictional, or other grounds.  *See* AS 12.72.010; Alaska R. Crim. P. 35.1; *Nelson v. State*, 273 P.3d 608, 611 (Alaska 2012) ("Post-conviction relief proceedings are civil in nature."  (citing *Hensel v. State*, 604 P.2d 222, 230-31 (Alaska 1979))).

[10]    *McCracken*, 518 P.2d at 91-92.

[11]    *See Donna A. v. State, Dep't of Heath & Soc. Servs. Office of Children's Servs.*, No. S-11391, 2005 WL 564143, at *3 n.4 (Alaska March 9, 2005) (noting that we have not decided whether the constitutional right to self-representation applies to CINA proceedings); *Matthew H. v. State, Dep't of Health & Soc. Servs. Office of Children's Servs.*, ___ P.3d ___ , Op. No.  7177, 2017 WL 2391681, at *4 n.8 (Alaska (continued...)

accept a valid waiver of the right to counsel by any party if the court determines that the party understands the benefits of counsel and knowingly waives those benefits."[12] We conclude that this rule effectively incorporates the *McCracken* standard into CINA proceedings. And like the Court of Appeals, we review decisions limiting or denying self-representation for abuse of discretion.[13]

**B.     The Trial Court Did Not Abuse Its Discretion In Denying Barry's Request To Represent Himself.**

Barry argues that the trial court erroneously denied him the opportunity to represent himself because it believed that his jurisdictional arguments lacked merit. But the record shows that the trial court did not make its decision based on Barry's attacks on its authority; rather, the court looked to the criteria from *McCracken* to decide whether he could represent himself.

The Alaska Court of Appeals applied the same criteria in a similar case. In *Falcone v. State* it upheld a trial court's refusal to allow Falcone to represent himself.[14] The trial court's decision in that case was based on a number of factors:

> [the defendant's] pretrial psychological evaluation, his pleadings, and his courtroom behavior. When given the chance to represent himself, Falcone filed bizarre pretrial motions, and insisted on presenting a defense based on the Uniform Commercial Code, admiralty jurisdiction, and his religious beliefs. Falcone also raised unintelligible objections

---

[11]     (...continued)
June 2, 2017) (same).

[12]     CINA Rule 12(c).

[13]     *See Falcone v. State*, 227 P.3d 469, 473 (Alaska App. 2010) (citing *Ramsey v. State*, 834 P.2d 811, 815 (Alaska App. 1992); *Gargan v. State*, 805 P.2d 998, 1001 (Alaska App. 1991)).

[14]     *Id.* at 474.

in court. In addition, Falcone repeatedly interrupted the judge, eventually requiring the judge to warn Falcone that he could be removed from the courtroom.[15]

The Court of Appeals affirmed, noting that Falcone's pleadings and objections "were neither rational nor coherent" and that "[h]is personality disorder and obstreperous courtroom conduct suggested that his trial presentation would be similarly unintelligible."[16] And it noted that his "behavior suggested that [Falcone] would not comport himself with the 'modicum of courtroom decorum' required by *McCracken*."[17]

Barry's behavior was similar. He "presented pleadings and courtroom objections that were neither rational nor coherent."[18] His "obstreperous courtroom conduct"[19] included repeatedly interrupting proceedings, despite warnings, until the court was forced to temporarily mute his telephone line at trial. He covertly broadcast a confidential hearing over VHF radio, which required the court to direct the VPSO to supervise his phone calls before he could participate again. His behavior during pretrial proceedings provided the trial court with ample basis to conclude that his trial presentation would be "similarly unintelligible,"[20] and his behavior at trial largely confirmed the wisdom of the court's decision to require that he be represented by counsel.

---

[15] *Id.* at 473.

[16] *Id.*

[17] *Id.* at 474 (quoting *McCracken*, 518 P.2d 85, 92 (Alaska 1974)).

[18] *See id.* at 473.

[19] *See id.*

[20] *See id.*

Barry insists that the trial court denied his request to represent himself "because [Barry] just [didn't] believe that [the] law applie[d] to him," i.e., because the court disagreed with Barry's view of the law. The record does not support him. The trial court did refer to Barry's beliefs about the law and noted its disagreement with his position. But the court emphasized that it understood his beliefs and that it "appreciate[d] that he [was] heartfelt and passionate about those beliefs." The court further noted that it "respect[ed]" those beliefs, even though it did not agree with them.

The court clearly based its decision not on Barry's beliefs, but on his behavior in "persist[ing] in his eccentric defenses to the point where it was virtually impossible to hold any meaningful discussion of his case, and to the point where [his] behavior suggested that he would not comport himself with the 'modicum of courtroom decorum' required by *McCracken*."[21] Barry responded to virtually every question from the court — why he wanted to dismiss his attorney, if it was okay to reschedule a hearing, whether he had received certain paperwork, whether he could hear the court over the telephone — with a challenge to the court's authority or a demand that the court prove its authority to Barry's satisfaction.

We therefore conclude that the trial court did not abuse its discretion in denying Barry's request to represent himself. We commend the trial court for the unfailing respect and patience that it exhibited throughout these proceedings.

## IV.   CONCLUSION

The decision of the trial court is AFFIRMED.

---

[21]     *See id.* at 474 (quoting *McCracken*, 518 P.2d at 92).