*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JENSEN D., | ) |
| | ) Supreme Court No. S-16774 |
| Appellant, | ) |
| | ) Superior Court No. 4FA-16-00020 CN |
| v. | ) |
| | ) O P I N I O N |
| STATE OF ALASKA, | ) |
| DEPARTMENT OF HEALTH & | ) No. 7265 – July 27, 2018 |
| SOCIAL SERVICES, OFFICE OF | ) |
| CHILDREN'S SERVICES, | ) |
| | ) |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Jane F. Kauvar, Judge.

Appearances: August J. Petropulos, Juneau, for Appellant. Aisha Tinker Bray, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee. Carol L. Jacoby, Assistant Public Advocate, Fairbanks, and Chad Holt, Public Advocate, Anchorage, Guardian Ad Litem.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

MAASSEN, Justice.

## I.    INTRODUCTION

A mother appeals the superior court's decision to terminate her parental rights to her seven-year-old daughter. The mother moved to represent herself in the middle of trial; on appeal she contends that the superior court abused its discretion when it denied her request on grounds that she lacked knowledge of the legal process, was unable to regulate her behavior in the courtroom, and could not view the case objectively.

We conclude that the record supports the court's decision that the mother was unable to act with the courtroom decorum necessary for self-representation. On that ground we affirm the denial of the mother's request.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Jensen D. is the mother of Emery, a seven-year-old girl who has been in the custody of the Office of Children's Services (OCS) since 2016.[1] OCS's efforts to reunite the two focused on Jensen's problems with substance abuse and mental health. In November 2016 OCS filed a petition to terminate Jensen's parental rights, asserting that none of its efforts had been successful because of Jensen's "unpredictable and dangerous behaviors, her significant mental health issues, and her continued abuse of substances."

### B.    Proceedings

Jensen was represented by appointed counsel. In April 2016 the court held a representation hearing to consider Jensen's request for a different attorney. Jensen asserted that she was having "a difficult time communicating with" her attorney and that he had failed to "follow through with what he says he's going to do [about] somehow convincing OCS to start my classes, somehow convincing them to pay for my therapist."

---

[1]    Pseudonyms have been used to protect the privacy of the parties.

The court asked Jensen when she had last used methamphetamine, observing that she seemed to be exhibiting its effects; she replied, "Honestly, it's been about a week." The court went on to conclude that the attorney's work on her behalf appeared to be "exemplary" and that there was no basis for removing him. Jensen made no request to represent herself at this hearing.

In June 2017 the court held a four-day termination trial. During the first day of trial the court again suspected that Jensen was under the influence of drugs or alcohol, apparently because of the lack of focus in Jensen's testimony; less than an hour into the proceedings the court took an early recess to allow Jensen and her attorney to consult about whether she was actually "in a condition to be testifying today." The trial proceeded on Jensen's assurance to the court that she was able to testify. The following day, however, the court advised Jensen that her talking at the counsel table was interfering with other witnesses' testimony; the court suggested that she sit in the back of the courtroom and consult with her attorney only during breaks in order to minimize disruptions. Even so, the court had to remind her again not to interrupt others' testimony.

At the start of the trial's third day, Jensen asked that she be allowed to represent herself. She contended that she was not being "properly defended" because her attorney was not calling the witnesses she wanted him to call or asking "the right questions." The court denied her request. It observed that Jensen did not "have the legal skills," lacked the "ability to regulate [her] behavior in the courtroom," and would probably "make a worse record for [her]self" if allowed to question witnesses. The court did, however, tell Jensen that she could read another statement at the end of the proceedings if she wanted to (she had read a lengthy one, describing her parenting efforts, at the close of the first trial day). The court also informed her that it could hold "a

separate hearing" at the close of trial "about whether there are, in fact, witnesses that would be helpful to [her] that [her attorney] chose not to call."

At the end of trial, after consulting with her attorney, Jensen declined the opportunity to give another statement — other than her lawyer's written closing — or to put on more witnesses. The court issued a detailed decision in August terminating Jensen's parental rights. It found that Emery was a child in need of aid pursuant to AS 47.10.011(1) (abandonment), (6) (risk of substantial physical harm), (8) (mental injury), (9) (neglect), (10) (parental substance abuse), and (11) (parental mental health). It found that Jensen had failed to remedy the conduct or conditions that made Emery a child in need of aid despite OCS's reasonable efforts. Finally, the court found that terminating Jensen's parental rights was in Emery's best interests and that continued placement of the child with her great-aunt was appropriate.

Jensen appeals only the denial of her request to represent herself during the termination trial.

## III.  STANDARD OF REVIEW

"[W]e review decisions limiting or denying self-representation for abuse of discretion."[2] Under the abuse of discretion standard, we ask "whether the reasons for the exercise of discretion are clearly untenable or unreasonable."[3] "We have held on many occasions that the trial court must provide sufficient factual findings to enable appellate review."[4]

---

[2]     *Barry H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 404 P.3d 1231, 1235 (Alaska 2017).

[3]     *Burke v. Maka*, 296 P.3d 976, 980 (Alaska 2013) (quoting *Lewis v. State*, 469 P.2d 689, 695 (Alaska 1970)).

[4]     *Petrilla v. Petrilla*, 305 P.3d 302, 307 (Alaska 2013) (citing *Richardson v.*
(continued...)

## IV.  DISCUSSION

**The Superior Court Did Not Abuse Its Discretion In Denying Jensen's Request To Represent Herself.**

Jensen argues that the superior court abused its discretion in not allowing her to represent herself because it failed to apply the governing test from *McCracken v. State*.[5]  In *McCracken* we concluded that the right to self-representation on a petition for post-conviction relief — and in civil matters generally — comes from Article I, section 21 of the Alaska Constitution, which specifies that "[t]he enumeration of rights in this constitution shall not impair or deny others retained by the people."[6]  We determined that "[a]t the time that the Alaska Constitution was enacted and became effective, the right of self-representation was so well established that it must be regarded as a right 'retained by the people.' "[7]  We held, however, that this right is "not absolute"; its exercise depends on a three-factor test.[8]  First, the court should "ascertain whether a [person] is capable of presenting his allegations in a rational and coherent manner."[9]  Second, the court should ensure that the person "understands precisely what he is giving up by declining the

---

[4]      (...continued)
*Kohlin*, 175 P.3d 43, 48 (Alaska 2008)).

[5]      518 P.2d 85 (Alaska 1974).

[6]      *Id.* at 91 (alteration in original) (quoting Alaska Const. Art. I § 21).

[7]      *Id.* (footnotes omitted).

[8]      *Id.* at 91-92.

[9]      *Id.* at 91.

assistance of counsel."[10] Finally, the court "should determine that the [person] is willing to conduct himself with at least a modicum of courtroom decorum."[11]

In *Barry H.* we held that the Child in Need of Aid (CINA) Rules incorporate the *McCracken* standard into CINA proceedings.[12] We explained that although "[t]he right to self-representation in CINA cases (or other civil matters) has no specific support in the constitutions of either Alaska or the United States,"[13] "the CINA rules themselves provide that a court 'shall accept a valid waiver of the right to counsel by any party if the court determines that the party understands the benefits of counsel and knowingly waives those benefits.' "[14] CINA Rule 12(c) "effectively incorporates the *McCracken* standard into CINA proceedings."[15]

In *Barry H.* we applied the *McCracken* factors to a father's request to represent himself in a CINA termination proceeding.[16] Barry had appeared telephonically at earlier hearings in the case and repeatedly challenged the court's jurisdiction.[17] He had acted inappropriately during those hearings, including arguing to the point that the superior court threatened to disconnect him from the hearing, and had broadcast

---

[10]     *Id.*

[11]     *Id.* at 92.

[12]     *Barry H.*, 404 P.3d at 1235.

[13]     *Id.* at 1234.

[14]     *Id.* at 1234-35 (quoting CINA Rule 12(c)).

[15]     *Id.* at 1235.

[16]     *Id.* at 1233-35.

[17]     *Id.* at 1232.

confidential proceedings over the local VHF radio.[18] Relying on the *McCracken* factors, the superior court denied Barry's request to represent himself because it did not believe he was "capable of presenting his case in a manner that is rational and coherent and consistent with the law that governs the case, primarily because he just doesn't believe that that law applies to him."[19]

Barry argued on appeal that the court had denied his self-representation request because it "disagreed with Barry's view of the law."[20] We concluded that the ruling was based instead on Barry's "behavior in 'persist[ing] in his eccentric defenses to the point where it was virtually impossible to hold any meaningful discussion of his case and to the point where [his] behavior suggested that he would not comport himself with the "modicum of courtroom decorum" required by *McCracken*.' "[21]

In reaching our decision in *Barry H.*, we cited favorably the court of appeals' opinion in *Falcone v. State*.[22] In *Falcone* a criminal defendant was initially allowed to represent himself, but the superior court appointed counsel after the defendant "filed bizarre pretrial motions, and insisted on presenting a defense based on the Uniform Commercial Code, admiralty jurisdiction, and his religious beliefs."[23] The court of appeals affirmed this ruling because the record showed that the defendant had "persisted in his eccentric defenses to the point where it was virtually impossible to hold any

---

[18]     *Id.* at 1233, 1235.

[19]     *Id.* at 1233.

[20]     *Id.* at 1235.

[21]     *Id.* at 1235-36 (alterations in original) (quoting *Falcone v. State*, 227 P.3d 469, 474 (Alaska App. 2010)).

[22]     *Falcone*, 227 P.3d at 474.

[23]     *Id.* at 473.

meaningful discussion of his case."[24] The court cautioned, however, that "[t]he question is not whether the defendant correctly understands the law and is capable of distinguishing a good defense from a poor one. Rather, the question is whether the defendant is capable of presenting his or her case in an understandable way."[25]

In this case, the superior court did not explicitly refer to the *McCracken* factors when deciding that Jensen could not represent herself. The court voiced its fear that Jensen's unfamiliarity with the CINA Rules and governing law would lead to a worse outcome, and that she would "make a worse record" for herself and harm her case by her lack of objectivity. As the court summarized in its later written termination decision, it denied Jensen's self-representation request "due to her lack of knowledge regarding the legal process, her inability to regulate her behavior in the courtroom, and her difficulty in having an objective view." But Jensen's ignorance of the legal process and her lack of objectivity are not relevant to whether she can represent herself;[26] the question is rather whether she "is capable of presenting [her] allegations" — even if her position is uneducated and lacking perspective — "in a rational and coherent manner."[27]

The court's other finding, however — that Jensen lacked the ability "to regulate her behavior in the courtroom" — is sufficient to justify denial of Jensen's request under *McCracken*'s third prong: whether the person "is willing to conduct [herself] with at least a modicum of courtroom decorum."[28] The transcript of the

---

[24]     *Id.* at 474.

[25]     *Id.*

[26]     *See id.*

[27]     *McCracken v. State*, 518 P.2d 85, 91 (Alaska 1974).

[28]     *Id.* at 92.

termination proceeding shows that the court had concerns about Jensen's courtroom demeanor within the first hour of the trial's first day; the court took an early break in proceedings to allow Jensen to "talk with her attorney about the condition that she's in today . . . [b]ecause I don't want to make a finding that she is or isn't on something, but she is having trouble tracking the — and sticking to just the question." The court continued, "And I don't know whether it's because she didn't sleep well last night or otherwise has taken something." Jensen interjected, "It's because I'm nervous, Your Honor," but the court advised the parties to "take a break and have [counsel] talk with [Jensen] about whether she really is in a condition to be testifying today and proceeding." When the parties returned to the courtroom the court reiterated its concerns about keeping Jensen focused during her testimony: "I am not convinced that you are in very good shape to be testifying because of your inability to follow [your attorney's] directions. . . . If you feel that you're not under the influence of anything and that you are okay to testify, I will let you continue." Trial went on after Jensen assured the court that she was "in condition to testify today." But the court later noted in its written decision that it "was concerned at times whether [Jensen] was under the influence[,] as she exhibited some similar symptoms to those described [in reports about her drug use]."

During the next trial day, Jensen's talking at counsel table interrupted other witnesses' testimony, and the court's instructions to her imply that it had been an ongoing problem. The court acknowledged that the proceeding was "upsetting" and "really difficult" for Jensen to sit through quietly, but it asked that unless she could talk with her counsel less obtrusively, she "could sit in the back . . . [and] wait and talk to him at a break, and . . . that might be easier for [her] and for the other people." Jensen apparently moved to the back of the courtroom for the duration of the trial day. The next day the court observed that "[i]t was borderline yesterday keeping her in the courtroom for a while."

Our review of the "courtroom decorum" basis for denying Jensen's self-representation request necessarily relies to a great extent on the court's own contemporaneous description of what it was seeing and reacting to in the courtroom. A more detailed record would better aid our review.[29] But the record supports at least two possibly related concerns: that Jensen was under the influence of some substance that made it hard for her to stay on track during her testimony, and that she was unable to refrain from interfering with the testimony of other witnesses by her conduct at counsel table. While not every interaction leading up to the court's responses to these concerns is discernible from the record before us, the seriousness of the concerns is evident in the court's responses: taking an early break in proceedings to allow Jensen and her counsel to assess whether she was fit to continue, and moving Jensen to the back of the courtroom to minimize her interruptions.

Finally, we note that the trial court took steps to minimize any prejudice its ruling may have caused Jensen. The court invited her to make an additional statement at the close of trial; it also informed her that it could "have a separate hearing about whether there are, in fact, witnesses that would be helpful to [her]" but whom her attorney had decided not to call. At the end of trial Jensen declined the opportunity to either give an additional statement or put on more witnesses.

We conclude that the court did not abuse its discretion in denying Jensen's request to represent herself.[30]

---

[29] *Compare Sagers v. Sackinger*, 318 P.3d 860, 864 (Alaska 2014) (reviewing denial of request for continuance on basis of illness and noting that the trial judge "carefully and repeatedly described for the record his contemporaneous observations of [the moving party's] appearance, conduct, and demeanor; this record greatly aids our appellate review of the issue").

[30] OCS also contends that the court properly denied Jensen's request to
<span style="float:right">(continued...)</span>

## V.  CONCLUSION

We AFFIRM the superior court's decision to terminate Jensen's parental rights.

---

**30**    (...continued)
represent herself because the request came at the start of the third day of trial and, if granted, would likely have delayed the proceedings to the child's detriment.  But the superior court did not mention timeliness as a reason for denying the motion or make any findings about the likelihood of delay; we are therefore unable to affirm the denial on that basis.