NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| TIMOTHY T., | ) | |
| | ) | Supreme Court No. S-18225 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-14-02856 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STEPHANIE T., | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 2147 – May 20, 2026 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael A. Macdonald, Judge.

Appearances: Mila A. Neubert, Neubert Law Office, LLC, Fairbanks, for Appellant. Lynda A. Limón, Limón Law, and Randi R. Vickers, Law Offices of Randi R. Vickers, Anchorage, for Appellee.

Before: Borghesan, Henderson, Pate, and Oravec, Justices. [Carney, Chief Justice, not participating.]

## I. INTRODUCTION

The superior court divided marital property in a divorce. One spouse challenges the division, arguing the court abused its discretion in determining the date of separation and by declining to award an array of credits for post-separation

---

\*       Entered under Alaska Appellate Rule 214.

expenditures to maintain marital property. Observing no error in the superior court's judgment, we affirm.

## II. FACTS AND PROCEEDINGS

Timothy (Tim) and Stephanie T. married in 1987. During the marriage Stephanie worked as a nurse and operated a weight-loss coaching business. Tim was a general surgeon.

Stephanie first moved out of the marital home and filed for divorce in November 2014. But she moved back into the home in mid-2015. The parties then agreed to dismiss the divorce complaint in October 2015.

During the period of reconciliation, Stephanie and Tim resumed some, but not all, of their prior financial relationships. The reconciliation effort ultimately failed: Stephanie moved out of the home again in October 2016 and filed to reopen the divorce in January 2017.

After several years of highly contentious motion practice, trial began in October 2020. The first phase of trial focused on establishing the date of separation. Tim argued that the date of separation was in November 2014, when Stephanie first moved out of the marital residence. Stephanie argued that the separation date was in October 2016, when she moved out the second time. The superior court agreed with Stephanie, ruling that the date of separation was in October 2016.

The second phase of trial addressed property division. After trial concluded in August 2021, the court divided the marital estate equally. Tim sought credits for the costs of maintaining certain marital property after the separation, including the marital home, an airplane, and two other real properties. But the court found that these were assets that Tim "held, had the personal benefit of, and is taking in this property division by agreement," and denied any credit.

Tim appeals.

## III. STANDARD OF REVIEW

The superior court's determination of the date of separation is reviewed for abuse of discretion.[1] The court has abused its discretion when its determination "lacks sufficient evidentiary support."[2] The court's decision to grant or deny a credit for post-separation payments made to maintain marital property is also reviewed for abuse of discretion,[3] which occurs when "the reasons for the exercise of [its] discretion are clearly untenable or unreasonable."[4]

## IV. DISCUSSION

Tim challenges the superior court's selection of the date of separation. He contends that during the reconciliation period, the couple never resumed the same level of joint economic activity as they had before the first filing of the divorce complaint in 2014. He suggests that Stephanie fraudulently induced him to reconcile to obtain a larger share of the marital estate. He also challenges the court's treatment of credits for post-separation expenses, arguing it failed to make required findings on two of his requested credits and abused its discretion in denying several others.

Tim's arguments are not persuasive. Substantial evidence supports the court's selection of the date of separation, and Tim's "sham reconciliation" theory is not convincing. The court also acted well within its discretion by declining to award post-separation credits to Tim. Thus, we affirm the superior court's decision.

### A. The Superior Court Did Not Abuse Its Discretion In Determining The Date Of Separation.

The superior court determined the date of separation was October 27, 2016, "the last day the parties operated as a joint family and economic enterprise." It

---

[1] *Faris v. Taylor*, 444 P.3d 180, 184 & n.5 (Alaska 2019).

[2] *Id.* at 185.

[3] *See Harrelson v. Harrelson*, 932 P.2d 247, 253 (Alaska 1997).

[4] *Hall v. Hall*, 446 P.3d 781, 783 (Alaska 2019) (quoting *Jensen D. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 424 P.3d 385, 387 (Alaska 2018)).

found that after Stephanie first filed for divorce in November 2014, she moved back into the marital home in the summer of 2015, began attending marriage counseling with Tim, and agreed to dismiss the pending divorce. It also found that the parties operated as a joint economic unit after reconciling, noting that they "shared living expenses, jointly contributed to a joint household bank account, jointly contributed to improvements to the marital residence, filed joint tax returns, and engaged in joint business and investment activities."

Tim challenges this determination, contending that the parties separated in November 2014, when Stephanie first moved out of the marital home and filed for divorce. He argues the superior court overlooked evidence that the parties' joint economic activities were more limited during the reconciliation period and also that their marriage counseling failed at some point during that time.

The date of separation is "the point at which 'the marriage has terminated as a joint enterprise' or when a couple is no longer 'functioning economically as a single unit.' "[5] Determining the date of separation is a "fact-specific inquiry" that requires evaluating both "the parties' objective and subjective intent to terminate the marital relationship."[6] The objective intent prong requires a finding that the parties have "objectively separated" by living apart, while the subjective intent prong is satisfied through a finding that "at least one party subjectively intended to separate."[7] Determining the date of separation is important because it "may determine whether acquired property is marital or separate."[8]

---

**5**      *Fletcher v. Fletcher*, 433 P.3d 1148, 1152 (Alaska 2018) (quoting *Tybus v. Holland*, 989 P.2d 1281, 1285 (Alaska 1999)).

**6**      *Id.* (quoting *Dundas v. Dundas*, 362 P.3d 468, 472 (Alaska 2015)).

**7**      *Faris*, 444 P.3d at 184-85.

**8**      *Dundas*, 362 P.3d at 472.

The superior court did not abuse its discretion when it determined the date of separation was October 27, 2016. Although Stephanie filed for divorce in November 2014, the couple subsequently reconciled and resumed operating as a single economic unit until Stephanie moved out again in October 2016. For example, during the period of reconciliation, Tim and Stephanie maintained a joint checking account, filed taxes jointly, and shared the costs of improvements to marital property, including a new roof on their home. They also took multiple vacations together and shared the expenses of these trips. The couple also sold a coffee farm they owned and used the proceeds to purchase real property in Fairbanks. Tim added Stephanie to his business payroll and gave her a salary advance.[9]

But the couple did not resume financial arrangements identical to those they had before November 2014. For instance, Tim and Stephanie each opened at least one separate bank account, and Stephanie did not add Tim to her business accounts. Stephanie also opened some separate investment accounts. They did not open a joint credit card, despite Tim's suggestion that they do so. And Stephanie purchased real property during this period that was titled only in her name.

Tim asserts that the superior court underemphasized these separate financial arrangements when it selected the date of separation. While he is correct that the existence of some ongoing financial entanglements by itself does not demonstrate continuing operation as a "marital economic unit,"[10] weighing conflicting evidence

---

[9] Although Tim's opening brief presents this as a claim for $150,000, his attorney stated at trial in April 2021 that the check was for $65,000, and a footnote in his reply brief likewise corrects this figure to $65,000.

[10] *See Dundas*, 362 P.3d at 472-73 (quoting *Ramsey v. Ramsey*, 834 P.2d 807, 809 (Alaska 1992)).

regarding the parties' financial entanglements is a function of the trial court.[11] Here, although the parties' subsequent financial arrangements were not identical to those before November 2014, the court did not abuse its discretion by relying on evidence that the couple were operating as a single economic unit during the reconciliation period.[12] The court was entitled to rely on evidence that the parties continued to maintain joint accounts, filed joint taxes, and shared property and vacation expenses to conclude that they continued operating as a single economic unit. Tim's reference to contrary evidence, such as the maintenance of separate accounts, does not demonstrate that the superior court abused its discretion when it selected the date of separation.

Tim also argues the superior court overlooked the failure of the parties' marriage counseling. But this argument lacks merit. First, the court's order acknowledged that the couple engaged in joint counseling, but found that "these efforts failed." The court simply appears not to have given much weight to the fact that marriage counseling failed.[13] Second, Tim never clearly identified the date that counseling failed. He testified that the couple stopped attending counseling together in the summer of 2015, but that they both attended counseling separately for a period of time. He does not specify whether, from his perspective, marriage counseling failed in the summer of 2015, or the fall of 2015 when he stopped his individual counseling, or in 2017 when Stephanie stopped seeing the counselor. The superior court did not err by failing to consider a date that Tim did not clearly identify. Finally, the fact that the

---

[11] *See Grove v. Grove*, 400 P.3d 109, 113 (Alaska 2017) ("[I]t is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence." (alteration in original) (quoting *Fink v. Mun. of Anchorage*, 379 P.3d 183, 192 (Alaska 2016))).

[12] We have "granted the superior court the discretion to identify the date of separation according to the facts before it." *Faris*, 444 P.3d at 184.

[13] *See Dundas*, 362 P.3d at 473 (noting court's consideration of failure of marriage counseling in determining date of separation).

parties were engaged in marriage counseling in 2015, even if it ultimately failed, tends to undercut Tim's proposed separation date of November 2014.

Tim also argues that even if Stephanie had subjective intent to reconcile, she fraudulently induced him to reconcile by withholding information about her intimate relationships with other men. He argues that if he had been aware of facts related to her other relationships, he would not have reconciled with Stephanie after the first divorce filing. He further maintains that her efforts to conceal these facts from him thus amount to "fraud in the inducement."

Fraud in the inducement provides a cause of action when one party fraudulently misrepresents the risks, duties, or obligations involved in a transaction, inducing the other party to enter into a contract.[14] But we have never recognized a claim for fraudulent inducement to continue an existing marital relationship, and Tim does not cite to any authority supporting such a claim. Our precedent supplies good reason to reject this proposed cause of action: Tim's claim of fraudulent inducement is, in effect, a "heartbalm tort,"[15] a category of claim we have previously rejected.[16]

---

[14] *Evertson v. Sibley*, 520 P.3d 157, 164-65 (Alaska 2022); *Indus. Com. Elec., Inc. v. McLees*, 101 P.3d 593, 598-99 (Alaska 2004); *see also* 17A C.J.S. *Contracts* § 218 (West 2025).

[15] At common law, "heartbalm torts" included actions for alienation of affections, breach of promise to marry, criminal conversation, and seduction. *Heartbalm Statute*, BLACK'S LAW DICTIONARY (12th ed. 2024).

[16] *See Coulson v. Steiner*, 390 P.3d 1139, 1142-43 (Alaska 2017) (barring alienation of affections claims as against public policy); *Harris v. Dragseth*, No. S-5502, 1994 WL 16459435, at *3 (Alaska Oct. 5, 1994) (declaring Alaska law does not recognize breach of promise-to-marry claims); AS 09.10.070(a) (barring claims of seduction unless otherwise provided by law). Other courts have also prohibited or restricted other heartbalm-like torts, including claims for fraudulent inducement related to adultery or false declarations of love. *See, e.g.*, *Askew v. Askew*, 28 Cal. Rptr. 2d 284, 294-95 (Cal. App. 1994); *Shea v. Cameron*, 93 N.E.3d 870, 877-78 (Mass. App. 2018).

Moreover, recognizing a claim for fraudulent inducement would undermine the legislature's clearly expressed policy precluding consideration of fault in divorce.[17]

But even if we were to endorse Tim's theory of fraudulent inducement, Tim's allegations here do not establish fraud. Tim does not argue on appeal that Stephanie intentionally manipulated the date of separation, only that he would have sought divorce sooner if he had known the truth about the extent and duration of Stephanie's infidelity and her feelings for him.[18] Tim appears to sincerely regret his decision to reconcile with Stephanie. But his regret does not transform the parties' decision to reconcile into an act of fraud.[19]

Thus, Tim's arguments fail and we hold that the superior court did not abuse its discretion in determining the date of separation.

## B. The Superior Court Did Not Err By Denying Tim's Request For Post-Separation Credits.

Tim argues that the superior court erred by denying him credit for a variety of expenditures on marital property. He contends that the court abused its discretion by (1) failing to make findings when denying credits for the parties' joint 2016 tax filing and a salary advance he paid Stephanie in early 2016 and (2) denying him credits for a range of other expenditures[20] after October 2016.

---

[17]    *See* AS 25.24.160(a)(4) (providing property in divorce shall be divided "in a just manner and without regard to which of the parties is in fault").

[18]    We have previously declined to resolve an argument regarding the risks posed by "sham reconciliations" because of the absence of evidence of an intent to manipulate the date of separation. *Christensen v. Christensen*, No. S-12056, 2006 WL 3114367, at *5 (Alaska Nov. 1, 2006).

[19]    *See Askew*, 28 Cal. Rptr. 2d at 294-95(discussing strong public policy against litigating parties' sincerity regarding intimate feelings and desires).

[20]    Tim sought credits for USAA insurance premiums and payments of expenses on four joint properties.

Tim's arguments are unavailing. The tax payment and the salary advance were made prior to the date of separation in October 2016, making them pre-separation expenditures and providing no basis for awarding credits for these costs. As for the rest of the credits Tim seeks, the court's reasons for denying them were not clearly unreasonable.[21]

### 1. Tim's expenditures on marital property before October 27, 2016 were pre-separation expenditures.

Tim first argues the superior court abused its discretion by denying his requests for credits for two payments he characterizes as "funds spent for Stephanie's benefit after separation" in 2016. He contends that the court's "failure to discuss either claim" amounts to an abuse of discretion and, relatedly, that the court failed to make necessary factual findings.[22]

The first credit Tim requests is for "covering Stephanie's tax liability for their joint 2016 filing." But as Tim's valuation expert testified, all of the tax liability until October 27, 2016 was marital. And Tim acknowledged that the couple filed a joint tax return for 2016. Married couples who file jointly are jointly and severally liable for

---

[21] *See Hall v. Hall*, 446 P.3d 781, 783 (Alaska 2019) ("Under the abuse of discretion standard, we ask whether the reasons for the exercise of discretion are clearly untenable or unreasonable." (quoting *Jensen D. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 424 P.3d 385, 387 (Alaska 2018)) (internal quotation marks omitted)).

[22] Stephanie argues that Tim waived this argument by failing to include these payments in his property table in the trial court. "[A] party seeking to raise an issue on appeal must have raised it and offered evidence on it in the trial court," but we have not held that claims must be included in a property table to be preserved for appeal. *Harvey v. Cook*, 172 P.3d 794, 802 (Alaska 2007). Tim raised this argument to the superior court, and therefore it has not been waived.

the entire amount of the tax debt.[23] Tim is not entitled to a credit for paying off marital debts with marital assets prior to separation.[24]

The second credit Tim requests is for a salary payment he advanced to Stephanie in 2016. Tim's attorney stated that this check was written in December 2015 and cashed in early 2016. By determining the date of separation was October 27, 2016, the superior court necessarily decided that this was not a post-separation payment. And Tim does not cite any case where we have allowed a party to claim credit for a payment made before the date of legal separation.[25]

Therefore, the superior court did not err in declining to credit Tim for either of these payments.

### 2. The superior court did not abuse its discretion by declining to award credit for Tim's post-separation expenditures on marital property.

The superior court is required to consider whether a spouse should receive what are commonly known as *Ramsey* credits for payments made from post-separation income to maintain marital property.[26] The court must make factual findings that "clearly indicate the court's consideration of a *Ramsey* credit and its rationale for awarding one or not."[27] But there is "no fixed rule requiring credit in all cases," and

---

[23]   26 U.S.C. § 6013(d)(3).

[24]   *See Sparks v. Sparks*, 233 P.3d 1091, 1099 (Alaska 2010) (noting post-separation credits are for "post-separation, non-marital income" used to maintain marital property), *overruled on other grounds by Engstrom v. Engstrom*, 350 P.3d 766 (Alaska 2015).

[25]   *See Maxwell v. Sosnowski*, 420 P.3d 1227, 1231 (Alaska 2018) (explaining that Alaska law "permits credit for payments made to maintain marital property to be granted only for payments made '*from post-separation income*'" (emphasis in original) (quoting *Beals v. Beals*, 303 P.3d 453, 464 (Alaska 2013))).

[26]   *Ramsey v. Ramsey*, 834 P.2d 807, 809 (Alaska 1992); *see, e.g.*, *Hall*, 446 P.3d at 782.

[27]   *Hall*, 446 P.3d at 782.

the superior court accordingly has broad discretion to award full, partial, or no credit for these payments in the final property division.[28]  In particular, the superior court may consider whether the credit should be "offset by the value of the benefit of post-separation use,"[29] as well as any disparity in the parties' incomes.[30]

Here, the superior court explicitly considered whether to award Tim a credit for such payments, but ultimately declined to do so under the circumstances of this case.  The court explained that it was denying *Ramsey* credits because  (1) Tim "held, had the personal benefit of, and is taking in this property division" the assets for which he sought credits; (2) the maintenance costs for those properties resulted in part from Tim's efforts to "intentionally and in bad faith" delay the litigation; (3) Tim's non-compliance with discovery requests meant "there [was] no way to trace where the money for this maintenance came from"; and (4) Tim "failed to sufficiently distinguish . . . unjustifiable claims from claims that might otherwise be recoverable."[31]

Tim first argues that the superior court abused its discretion by considering the fact that he "held [and] had the personal benefit of" the property in question.  He suggests it is "problematic" to consider which party receives the property in the division of marital assets and points out that Stephanie "was not excluded" from some of the property at issue.  But we have explicitly approved the trial court's consideration of whether any credit for post-separation payments should be "offset by the value of the

---

[28]    *Ramsey*, 834 P.2d at 809; *Rohde v. Rohde*, 507 P.3d 986, 995 (Alaska 2022) ("[T]he court retains the discretion to decide whether such payments should be credited to a party in the property division.").

[29]    *Beals*, 303 P.3d at 464.

[30]    *Conner v. Conner*, 68 P.3d 1232, 1238 (Alaska 2003).

[31]    *See Hansen v. Hansen*, 119 P.3d 1005, 1011-12 (Alaska 2005) (concluding superior court did not abuse its discretion when it gave "clear reasons for its decision" to deny credit).

benefit of post-separation use."[32] Thus, it was not an abuse of discretion for the superior court to conclude that Tim's post-separation use of the property — including the house he lived in and the hangar where he stored his airplane during the proceedings — offset any credit he might claim.

Tim suggests the superior court should have made specific findings on the fair market rental value of the property and whether his use of the property outweighed his costs. But the authority he relies on simply requires the court to "make factual findings on whether a credit is appropriate."[33] The court did so here. And nothing in our precedent addressing similar circumstances has required the accounting that Tim suggests is necessary.[34]

Tim next argues that the superior court abused its discretion by considering Tim's misconduct during discovery, arguing that a court's ruling on *Ramsey* credits "is limited to economic conduct." But even if we assume Tim is correct that the court may only consider economic misconduct in declining a *Ramsey* credit award, intentional misconduct during litigation that "increase[s] the costs of maintaining the property postseparation," as the superior court found here, may properly be considered as economic conduct relevant to whether a credit should be awarded.[35] Tim argues that Stephanie also caused some discovery delays, but he does not dispute that he also contributed to these delays. It was appropriate for the court to focus on Tim's delays when deciding whether to grant his request for an unequal

---

[32] *Beals*, 303 P.3d at 464.

[33] *Hall v. Hall*, 446 P.3d 781, 785 (Alaska 2019) (quoting *Johnson v. Johnson*, No. S-12891, 2009 WL 564692, at *5 (Alaska Mar. 4, 2009)).

[34] *See, e.g.*, *id.* at 784-85; *Berry v. Berry*, 978 P.2d 93, 96-97 (Alaska 1999).

[35] *See Hudson v. Hudson*, 532 P.3d 272, 281 (Alaska 2023) (listing factors for determining whether conduct is economic misconduct).

property distribution that would favor him. Thus, the superior court did not abuse its discretion by relying on this reason to deny the credit Tim seeks.

Tim's third argument is that the superior court did not need to trace the source of funds for the post-separation payments because the concept of tracing[36] is legally inapplicable to post-separation payments and there was no evidence suggesting Tim used marital property to make the post-separation payments. This argument is unpersuasive. *Ramsey* credits may only be awarded for contributions to marital property "made from separate property."[37] And "[t]he party seeking to establish that property is separate always bears the burden of proof."[38] It was therefore Tim's burden to demonstrate that the funds used for post-separation maintenance were his separate property. The court did not abuse its discretion when it concluded that it did not have enough information to make findings supporting a credit, namely because it lacked sufficient information about the origins of Tim's post-separation payments: Tim "largely succeeded in keeping his . . . income information from the court."

Finally, Tim argues that his claims for reimbursement were well-organized and that the superior court erred by rejecting all of them for a failure to "sufficiently distinguish" his justifiable from his unjustifiable claims. He contends that the court could have denied credit for some payments, but granted credit for others. But the court arrived at its conclusion based on a factual finding that Tim failed to distinguish his "unjustifiable claims from claims that might otherwise be recoverable." Tim counters on appeal that while some of his claims "might not have been creditable," those amounts were "easily separable from" his creditable claims. Our review of the

---

[36] *See Rose v. Rose*, 755 P.2d 1121, 1124 (Alaska 1988).

[37] *Brotherton v. Brotherton*, 941 P.2d 1241, 1246 (Alaska 1997) (citing *Ramsey v. Ramsey*, 834 P.2d 807, 807 (Alaska 1992)).

[38] *Schmitz v. Schmitz*, 88 P.3d 1116, 1128 (Alaska 2004).

record does not convince us that the superior court clearly erred[39] by finding that Tim failed to identify which of his claims were creditable: Tim himself does not point to which claims he thinks were supported by "clearly discernable" evidence, and Tim's accounting of his claimed reimbursements in the record is opaque.

For these reasons, we hold that the superior court did not abuse its discretion by declining to award credit for Tim's post-separation expenditures on marital property.

## V. CONCLUSION

The judgment of the superior court is AFFIRMED.

---

[39] We review a trial court's factual findings for clear error. *See Cox v. Cox*, 882 P.2d 909, 913-14 (Alaska 1994).