BOLGER, Chief Justice.
*183 I. INTRODUCTION
A couple divorced after over 40 years of marriage. Although the wife had moved to a different state several years prior, the superior court determined that their date of separation was in 2014. The court also recaptured pension payments the two received after this date. The wife appeals, arguing that these and various other aspects of the superior court's property division were erroneous.
The superior court neither erred nor abused its discretion in its determination of the date of separation. And most of the wife's other challenges to the property division are without merit. But we reverse the superior court's failure to make specific factual findings in its recapture analysis.
II. FACTS AND PROCEEDINGS
A. Facts
Gordon Taylor and Tamra Faris were married in 1973. For most of their marriage, they lived in Juneau. Faris spent her entire career working for the federal government, earning a Civil Service Retirement System (CSRS) pension. In 2004 Faris accepted a promotion and moved to Honolulu, Hawaii. She moved to Portland, Oregon, also for work reasons, in 2006 and currently resides there. She retired from her career with the federal government in 2010.
When Faris moved, Taylor remained in Juneau. Taylor held a variety of jobs during his marriage to Faris, including various positions with the State of Alaska that made him eligible for Public Employees' Retirement System (PERS). He retired in 2011 and now draws from a PERS annuity and Social Security.
B. Proceedings
1. The divorce trial
In 2013 Taylor filed for divorce. He and Faris reached a settlement agreement in February 2014 and the court entered a divorce decree at that time. Three days later, however, Faris sought to withdraw distribution of property from that agreement.
The superior court held five days of trial on the couple's property division in late 2015 and early 2016, after the settlement agreement had broken down. The court issued an order dividing the marital estate in May 2017. It concluded that the parties had not separated until 2014, when they divorced.
To divide the marital estate, the superior court first determined the properties available for distribution. These included two marital properties: a home in Juneau and a second home in Portland, Oregon.[1] The court valued the Juneau home at $450,000 and awarded it to Taylor. It found that the Portland home was worth $580,000 and awarded the home to Faris.
The court then valued and distributed the remaining property, finding it "equitable to divide the estate with 50% of the assets awarded to each party." This split required dividing the parties' pension payments between them so that each would receive the same monthly income. The court heard expert testimony on the value of each party's pensions, but the testimony conflicted. The court elected to split the monthly pension payments in half, using a qualified domestic relations order (QDRO).
The court also considered the pension payments the parties had received since the date of separation in 2014. The court calculated the total benefit each party received from this income and credited that benefit against each party's award, thereby "recapturing" the parties' post-separation pension payments.
2. Post-trial motions
After the trial Faris filed several motions for reconsideration, arguing in relevant part that the court erred when it (1) recaptured the CSRS payments received between the date the divorce was granted and the close of *184 trial and (2) determined that the date of separation was in 2014.
The superior court denied reconsideration of these issues. It found that both parties had "treated the [post-separation] PERS and CSRS payments as separate assets," effectively converting them to a non-marital form,[2] and declined to revisit its decision to recapture. The court also declined to revisit its date of separation determination, noting that social relations had continued between the parties after 2004.
Faris appeals the superior court's order dividing the marital estate.[3]
III. DISCUSSION
A. The Superior Court Correctly Determined That The Date Of Separation Was In 2014.
The superior court determined that the date of Faris's and Taylor's separation was February 11, 2014, the date on which the court issued their divorce decree. Faris argues that the court erred in two ways. First she argues that the court "selected the wrong legal rule" when determining the separation date.[4] She claims that the superior court used "a legal rule that adopts the bright-line convenience of date of trial instead of the more equitable date of separation. " (Emphasis in original.) But Faris's argument incorrectly characterizes the superior court's analysis. The superior court did not rely solely on the date the divorce was granted to determine the date of separation. Instead, it analyzed the facts of the case to determine when the marriage functionally terminated. This was consistent with our precedent: we have expressly rejected defining the date of separation as a matter of law, and have instead granted the superior court the discretion to identify the date of separation according to the facts before it.[5] The superior court did not commit legal error in its analysis.
Faris also argues that the court abused its discretion when it determined that the separation date was in 2014 because she contends that the parties separated in 2004 when she moved to Hawaii. "Alaska law has defined [the separation date] as the point at which 'the marriage has terminated as a joint enterprise' or when a couple is no longer 'functioning economically as a single unit.' "[6] Identifying this termination requires considering whether the parties have objectively separated and "live physically apart from one another."[7] It also requires evaluating whether at least one party subjectively intended to *185 separate.[8] A superior court abuses its discretion if its separation date determination lacks sufficient evidentiary support.[9]
Here the evidence suggests that Faris and Taylor objectively separated in 2004, but they lacked the subjective intent to separate until 2014. Faris moved physically apart from Taylor in 2004. But the superior court found that "the parties' marriage ... would have continued if Mr. Taylor did not file for divorce." There is ample evidence in the record to support the superior court's finding, as Faris made repeated statements after 2004 demonstrating an intent not to separate. In 2013 she wrote a letter explicitly stating that she did "not want a divorce." And in January 2014 she wrote an email stating that she "would have never filed for divorce, no matter what, ever. That is still true. I do not want divorce." Even after the superior court issued its divorce decree in February 2014, Faris claimed in an affidavit that the "divorce was entirely [Taylor's] idea" and reiterated that she did "not want to be divorced."
Faris claims that her move to Hawaii evinced a declaration of "financial separation," yet the record indicates that a financial entanglement continued until 2014: Faris and Taylor filed joint tax returns until 2014. They also held properties jointly in a living trust. Faris's own words and actions undermine her argument that she intended to separate in 2004. The superior court did not abuse its discretion in determining that the date of separation was in 2014.
B. The Superior Court Did Not Clearly Err When It Determined That The Portland Home Was Marital Property.
It is uncontested that the parties' Portland, Oregon property was purchased in 2006. "Generally, 'all assets acquired by the parties during their marriage are marital property' except for gifts and inheritances."[10] Faris sets the date of separation in 2004 and argues that consequently the Portland home cannot be marital property. But because we have upheld the superior court's finding that the date of separation was in 2014, the home was purchased during the marriage. The superior court thus did not clearly err in determining that the home was marital property.
C. The Superior Court Did Not Clearly Err In Its Valuation Of The Juneau Home.
At trial Faris argued that the parties' Juneau property could be subdivided, and thus it had a higher value than the $450,000 submitted by Taylor. The court found this suggestion to be "purely speculative." It reasoned that "[s]ince Mr. Taylor has not subdivided the land, built the necessary driveway, or otherwise taken any concrete action to solidify this intention, the court cannot accept Ms. Faris's $505,000 valuation for the [Juneau] property." The court rejected Faris's valuation and adopted Taylor's.
Faris argues that the court erred in its valuation of the property because it failed to consider evidence of Taylor's intention to subdivide the lot.[11] This evidence included an application for a driveway permit, a plat showing a second driveway, the confirmed legality of a subdivision, Faris's own testimony, and letters from Taylor indicating a desire to "split the land" and "build a small efficient home."
We have instructed trial courts to avoid property valuations based on speculative improvements to property. In Edelman v. Edelman , we held such a valuation to be clearly erroneous, in part because of the unknown expenses that might be required to complete a subdivision on which the valuation was *186 based.[12] The superior court heeded that precedent here: it declined to use a higher valuation for a hypothetically subdivided plot when neither the subdivision nor the necessary construction of a driveway had occurred. It did not err in adopting the lower valuation for the unsubdivided plot.
D. The Superior Court Did Not Err By Awarding Faris Half Her Pension.
Faris argues that the superior court erred by not awarding her 100% of the payments from her CSRS pension. She contends that the parties' 2014 divorce decree incorporated a settlement agreement that made such an award. She contends that the terms of the settlement are still effective.[13]
But Faris unilaterally sought withdrawal from that settlement. And the superior court later vacated the property distribution order and findings that had been based on the settlement. The superior court did not revive the settlement when it determined that the date of separation was in 2014. Accordingly the superior court did not err by distributing Faris's pension payments between Taylor and herself.
E. The Superior Court Did Not Abuse Its Discretion When It Used A QDRO To Divide Future Pension Income.
The superior court divided the parties' pensions evenly, using a QDRO, so that both parties would have the same monthly income. When explaining how this income would be divided, the court referenced the parties' expert witnesses, who assigned conflicting valuations to each of the pensions. The court concluded "that the equities in this case necessitate the equalization of income between the parties."
Faris argues that the court's division is incorrect because the court treated the pension income separately from the estate. She contends that the court should have instead determined the present value of the pension plans and included this within the estate. We review allocation of property for abuse of discretion; "[w]e will not disturb the [superior] court's allocation unless it is clearly unjust."[14]
We have stated that it is not an abuse of discretion for a superior court to use a QDRO when the evidence does not permit an accurate valuation of the pensions.[15] Here the parties presented conflicting evidence on the value of their retirement benefits. It was within the superior court's discretion to divide the income with a QDRO because the true value of the pensions was unclear.
F. The Superior Court Did Not Perform An Adequate Recapture Analysis.
Parties who control a marital asset during separation may be required to compensate the other party if they dissipate or waste the asset or convert it to non-marital form.[16] A superior court may effect this compensation by ordering "recapture" of such assets, i.e., crediting them against the responsible party's property distribution award.[17]
Here the superior court recaptured the total reduced retirement pay Faris received between the date of her separation from Taylor and the marital estate's final division in May 2017.[18] The court reasoned *187 that recapture of these marital assets was warranted because "neither party shared either of the [retirement] payments with the other." Faris argues that the superior court erred because the recaptured payments were not wasted, dissipated, or converted to non-marital form, but rather spent on her legitimate living expenses.
We review an order of recapture for an abuse of discretion.[19] We have stated that a superior court abuses its discretion when, absent specific evidentiary findings of dissipation, waste, or conversion to a non-marital form, it orders recapture of marital assets no longer existing at the time of trial.[20] We have also instructed that "findings cannot be merely conclusory, but must be based on evidence."[21]
Here the superior court did not make "any findings about what [the parties] actually did with [their] pension income[s]."[22] Furthermore the court failed to consider whether the funds "still existed at the time of trial."[23] And if they did not exist, the superior court cited no evidence that the funds had been converted "with the intent to deprive the marital estate."[24] It was an abuse of discretion for the court to order a recapture of those funds absent such specific findings. We therefore remand so the superior court has an opportunity to complete a full recapture analysis.
IV. CONCLUSION
We VACATE the superior court's decision on the recapture of the retirement pay received between the date of separation and the final property division order and REMAND for clarifying findings on this issue. Based on its recapture decision, the court is authorized to modify the property division order to the extent necessary to effect an equitable division. We AFFIRM on all other issues raised in this appeal.

A third property, a cabin in Juneau, was also determined to be marital property and was awarded to Taylor. It is not at issue on appeal.

See Day v. Williams , 285 P.3d 256, 260 (Alaska 2012) (noting that a court may only issue an order of recapture if assets at issue were "wasted, dissipated, or converted to a non-marital form").

On appeal Faris alleges that the superior court failed to award her $100,000 in attorney's fees resulting from "procedural delay[s] and time-wasting actions." Yet Faris raised this argument only in her reply brief. "[W]e deem waived any arguments raised for the first time in a reply brief." Barnett v. Barnett , 238 P.3d 594, 603 (Alaska 2010).

"[W]hether the trial court applied the correct legal rule in exercising its discretion is a question of law that we review de novo using our independent judgment." Richter v. Richter , 330 P.3d 934, 937 (Alaska 2014) (alteration in original) (quoting Stanhope v. Stanhope , 306 P.3d 1282, 1286 (Alaska 2013) ).

See Schanck v. Schanck , 717 P.2d 1, 3 (Alaska 1986) ("We decline to specify, as a matter of law, that the effective date when ... earnings become severable from marital property is at separation or at filing for divorce. Each case must be judged on its facts to determine when the marriage has terminated as a joint enterprise."); see also Dundas v. Dundas , 362 P.3d 468, 472 (Alaska 2015) ("Determining 'the separation date is a fact-specific inquiry.' " (quoting Tybus v. Holland , 989 P.2d 1281, 1285 (Alaska 1999) )); Hanlon v. Hanlon , 871 P.2d 229, 231 (Alaska 1994) ("Determining the cutoff date for distinguishing marital from non-marital property is a matter for resolution by the trial court on a case-by-case basis; we have declined to treat the matter as an issue of law."). We review the date of separation determination for an abuse of discretion. See, e.g. , Dunmore v. Dunmore , 420 P.3d 1187, 1195 (Alaska 2018) ; Dundas , 362 P.3d at 473 ; Tybus , 989 P.2d at 1284-85 ; Hanlon , 871 P.2d at 231.

Fletcher v. Fletcher , 433 P.3d 1148, 1152 (Alaska 2018) (alteration in original) (quoting Tybus , 989 P.2d at 1285 ).

Id. at 1153 (quoting Dundas , 362 P.3d at 472 n.2 ).

Id . (quoting Dundas , 362 P.3d at 472 n.2 ).

Id .

Beals v. Beals , 303 P.3d 453, 460 (Alaska 2013) (quoting Johns v. Johns , 945 P.2d 1222, 1225 (Alaska 1997) ). We review the superior court's determination of what property is available for distribution for clear error. Dunmore , 420 P.3d at 1190.

We review the valuation of property for clear error. Wagner v. Wagner , 386 P.3d 1249, 1251 (Alaska 2017) (citing Limeres v. Limeres , 320 P.3d 291, 296 (Alaska 2014) ).

3 P.3d 348, 352-53 (Alaska 2000).

Whether a settlement agreement remains binding on the parties is a question of law, reviewed de novo. See Calais Co. v. Ivy , 303 P.3d 410, 414 (Alaska 2013) ("We interpret settlement agreements as contracts. The interpretation of contractual terms is a question of law, which we review de novo.").

Partridge v. Partridge , 239 P.3d 680, 685 (Alaska 2010).

See id . at 687 ; see also Nicholson v. Wolfe , 974 P.2d 417, 425-26 (Alaska 1999) ("Trial courts have discretion to distribute retirement benefits to a non-employee spouse through either a qualified domestic relations order (QDRO) or through a lump sum payout.").

Ethelbah v. Walker , 225 P.3d 1082, 1090 (Alaska 2009).

See id.

The superior court reduced its calculation of Faris's pension income to account for mortgage payments she made for the Portland home as well as state and federal income taxes.

Day v. Williams , 285 P.3d 256, 260 (Alaska 2012).

See, e.g. , id. ; Ethelbah , 225 P.3d at 1090 ; Foster v. Foster , 883 P.2d 397, 399-400 (Alaska 1994).

Day , 285 P.3d at 260 (quoting Ethelbah , 225 P.3d at 1091 ).

Ethelbah , 225 P.3d at 1091.

Partridge v. Partridge , 239 P.3d 680, 692 (Alaska 2010).

Brandal v. Shangin , 36 P.3d 1188, 1194 (Alaska 2001).