NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MARIE ALICE CECCHINI STERNQUIST, | ) | Supreme Court No. S-17594 |
| | ) | |
| Appellant, | ) | Superior Court No. 3AN-17-09650 CI |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND JUDGMENT[*] |
| GREG LEVERN STERNQUIST, | ) | |
| | ) | No. 1901 – June 15, 2022 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Herman G. Walker, Jr., Judge.

Appearances: Marie Alice Cecchini Sternquist, pro se, Anchorage, Appellant. David W. Baranow, Law Offices of David Baranow, Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices.

## I.    INTRODUCTION

A divorcing couple reached a mediated settlement of their property disputes but were unable to reduce their agreement to writing. The husband drafted findings of fact and conclusions of law and a proposed settlement agreement that the court adopted over the wife's objections.

---

[*]    Entered under Alaska Appellate Rule 214.

The wife contends that the documents adopted by the court fail to reflect the parties' actual agreement on three issues: division of retirement accounts, allocation of personal property, and the date of separation. She also contends that she is entitled to attorney's fees for the husband's discovery violations; that the superior court erroneously failed to enforce an order requiring joint filing of one year's tax returns; and that the court abused its discretion by requiring her to share the cost of an accountant to review those returns. We agree with her in part. We agree that the adopted settlement agreement does not properly reflect the parties' agreement with regard to retirement accounts and the allocation of personal property, and we therefore remand for further consideration of those two issues. On the remaining issues we find no error or abuse of discretion and therefore affirm the court's decisions.

## II. FACTS AND PROCEEDINGS

Marie and Greg Sternquist were married in 2008. Greg filed for divorce in 2013, dismissed the action, and filed for divorce again in October 2017.

The marital estate was complex. Each party entered the marriage with considerable assets; Greg had four retirement accounts and Marie had two. Marie owned rental properties in other states, and they jointly owned two homes in Anchorage. Greg owned a chiropractic clinic where Marie had worked for several years during the marriage.

After over a year of contentious proceedings, Greg and Marie settled their property disputes at a February 2019 mediation. The settlement was memorialized in a handwritten list of issues on which they had reached agreement, apparently drafted by the mediator and signed by both Greg and Marie. The mediator also made a recording in which he described the agreement, provision by provision, and elicited the parties' oral consent to it. In sum, the parties agreed to the allocation of the residences, rental properties, chiropractic business, and other major assets. They agreed to "QDRO marital

portions of retirement [accounts plus] gains [and] losses."[1]  They divided their personal property as shown on a separate spreadsheet, and Greg agreed to make an equalization payment to Marie.

When the parties next appeared in court they informed the judge that they disagreed about the settlement's terms, particularly the QDRO requirement.  Marie wanted a QDRO for at least four of the parties' six retirement accounts, but Greg interpreted their agreement as requiring a QDRO only for those accounts that were first determined to contain marital funds.  The court decided it could not enforce the settlement when it did not "even know if there's a meeting of the minds," and it advised the parties to work together to determine which accounts contained marital funds.  The parties returned to court several months later, still without agreement on the division of the accounts.  Greg's counsel advised the court that he was drafting a set of findings and conclusions, reflecting the parties' settlement as he understood it, which the court could adopt by order even if Marie continued to disagree.

A week later Greg submitted a set of "non-stipulated pleadings" consisting of findings of fact and conclusions of law, his version of the settlement agreement, a spreadsheet showing the property allocation, and a divorce decree.  Marie filed objections.  As relevant to this appeal, she complained that Greg's proposal ignored their agreement at mediation to use QDROs on all the retirement accounts, that Greg's property spreadsheet differed from the one used at mediation, that the decree had the wrong date of separation, and that Greg continued to withhold discovery related to his assets.

---

[1]  A Qualified Domestic Relations Order (QDRO) is "any judgment, decree, or order" "made pursuant to a State domestic relations law" "which creates or recognizes the existence of an alternate payee's right to . . . receive all or a portion of the benefits payable with respect to" a retirement plan.  29 U.S.C. § 1056(d)(3)(B).

The court signed the divorce decree and Greg's proposed findings of fact and conclusions of law, incorporating Greg's version of the settlement agreement. A day later it signed an order requiring the parties to hire an accountant to review their tax filings, splitting the cost equally. Marie moved for reconsideration of this order, arguing that the court had earlier ordered Greg to bear the cost; the court denied the motion. Marie appeals.

## III. DISCUSSION

Marie's arguments on appeal raise essentially six issues. She contends that the settlement agreement and the findings of fact and conclusions of law adopted by the superior court do not reflect the parties' actual agreement at mediation with respect to three issues: the QDRO requirement, the division of personal property, and the date of separation. She also challenges rulings on attorney's fees, discovery, and tax filings. We address each issue in turn.

### A. The Settlement Agreement As Adopted By The Superior Court Does Not Reflect The Parties' Actual Agreement At Mediation.

"We review a superior court's decision to enforce a settlement agreement for abuse of discretion and will reverse only if a review of the entire record leaves us with a definite and firm conviction that the superior court has erred."[2] But "[w]e review a settlement agreement using contract principles, and the proper meaning of a contract is a legal question, which we review de novo."[3] "When interpreting any contract, the goal is to give effect to the reasonable expectations of the parties."[4]

---

[2]    *Colton v. Colton*, 244 P.3d 1121, 1126 (Alaska 2010) (footnote omitted).

[3]    *Easley v. Easley*, 394 P.3d 517, 521 (Alaska 2017).

[4]    *Mahan v. Mahan*, 347 P.3d 91, 94 (Alaska 2015) (quoting *Villars v. Villars*, 277 P.3d 763, 768 (Alaska 2012)).

### 1. QDRO requirement

Marie argues that the settlement agreement as adopted by the court fails to reflect the parties' mutual agreement that QDROs would be issued for all four of Greg's retirement accounts. The mediator's handwritten list of settled issues, signed by the parties, reads: "QDRO marital portions of retirement + gains losses." The mediator explained this provision orally:

> QDRO marital portion of retirement plus gains and losses. The parties have retirement accounts. The parties have agreed [on] the date of marriage, no dispute as to that. The parties have agreed that the date of separation is October 2017. So any contributions that the parties have made to their retirement accounts [during the marriage are] considered marital. That contribution plus any gains or losses is the marital portion of it and it will be divided 50/50.

Following his explanation of the agreement's provisions, the mediator asked Greg's counsel whether there was anything he "wish[ed] to add, clarify, or comment [on]"; the lawyer voiced no concerns about the QDRO provision. Greg then confirmed that he believed the agreement to be "a fair agreement."

Greg's later written version of the parties' agreement expanded on the QDRO provision by allowing alternate methods of dividing the funds:

> The parties shall divide the marital portions of each part[y's] retirement-related accounts equally, by way of [QDRO](s), *or such other division documentation as shall be deemed acceptable by the custodian/administrator of each such fund or account.* Such divisions shall be applied to the marital portion of each such account . . . if any, and division shall include investment gain or loss from the date of separation to the date of allocation. [Emphasis added.]

Marie objected to the added language, arguing that "[i]t was not part of the agreement to use any other division documentation" than QDROs. But the court adopted Greg's version of the agreement as written.

We agree with Marie that the adopted version does not reflect the parties' mutual intent as objectively expressed. Neither the handwritten list of settled issues nor the recorded conversation about it uses any language suggesting that the accounts could be divided by means other than a QDRO. Indeed, when Greg first raised the possibility of using alternate forms of documentation in a later hearing, he explained that the idea came from fund administrators following settlement. And throughout the later proceedings, Marie was adamant in her refusal to accept anything other than QDROs, insisting that less formal methods of accounting would allow Greg to hide marital funds.

We understand Greg's position that there are less burdensome and time-consuming ways to deal with the retirement accounts. But it is clear to us, as it was initially clear to the superior court, that there is no meeting of the minds on dividing the marital funds in Greg's retirement accounts by any means other than QDROs. And while the handwritten list of settled issues requires the parties to "QDRO marital portions," it does not say how the parties are to determine which accounts contain marital funds subject to QDRO. We note that Marie's position on this has varied. At a July 2019 hearing she appeared to concede that two of Greg's accounts were entirely premarital and QDROs were necessary for only the other two; she does not make this distinction on appeal, arguing that all four "have a marital component."

On remand, therefore, the superior court should determine — to the extent possible from the available documentation, if it cannot do so by agreement — which of the parties' retirement accounts contain marital funds. To best effectuate the parties'

mutual intent, the court should issue QDROs for any accounts that cannot be excluded as entirely premarital.[5]

## 2. Personal property spreadsheets

Marie's second complaint about the settlement agreement as adopted by the superior court is that it incorporates a different personal property spreadsheet than the one the parties agreed to at mediation. The handwritten list of settled issues states: "Each keeps personal items per amended exhibit A." The mediator explained in his oral commentary that "exhibit A" was "the one I'm talking about with the yellow highlights."

The draft settlement agreement Greg submitted to the court states that it "shall include and does incorporate an amended property spreadsheet attached hereto as Exhibit A, which shall signify the agreed allocation of the various marital and non-marital assets and debts. Each spouse shall retain the personalty identified as being allocated to them in the referenced spreadsheet." The attached Exhibit A does not contain yellow highlights.

Marie's objections to Greg's proposed findings and conclusions attached what she claimed was the Exhibit A used at the mediation. There are some differences between hers and Greg's. Marie's version grants her the painting equipment, belt sander, and "Outcast Fish Cat Customizations," while Greg's version allocates that property to him. Greg does not explain these discrepancies or point to a different document as the one the mediator identified.

The parties' reasonable expectations, as expressed at the mediation, were that their settlement agreement incorporated a specific spreadsheet marked as Exhibit A "with the yellow highlights." The court on remand should identify that specific

---

[5]     *See, e.g., Odom v. Odom*, 141 P.3d 324, 329 (Alaska 2006) ("Because [husband's] interests were inherited before the marriage, or created using entirely premarital assets, they were presumptively unavailable for distribution in the divorce.").

spreadsheet and ensure that Exhibit A reflects the parties' intended distribution of personal property.

### 3. The date of separation

The superior court accepted Greg's proposed finding that the parties "separated permanently on or about October 1, 2017 as mutually agreed." Marie challenges this date, contending that it should be "either October 27, 2017, Marie's last day of employment" at the chiropractic clinic, or a week earlier when she was served with the divorce complaint. The date of the parties' separation is important because it "may determine whether acquired property is marital or separate."[6] The mediator's handwritten list of settled issues does not include a separation date, but in describing the agreement's terms the mediator said, "The parties have agreed that the date of separation is October 2017"; neither party objected. "[W]e have expressly rejected defining the date of separation as a matter of law, and have instead granted the superior court the discretion to identify the date of separation according to the facts before it."[7] The court's task is to find "the point at which 'the marriage has terminated as a joint enterprise' or when a couple is no longer 'functioning economically as a single unit.' "[8] Relevant considerations include "whether the parties have objectively separated" — that is, are living apart — and "whether at least one party subjectively intended to separate."[9] "A

---

[6] *Dundas v. Dundas*, 362 P.3d 468, 472 (Alaska 2015).

[7] *Faris v. Taylor*, 444 P.3d 180, 184 (Alaska 2019).

[8] *Id.* (quoting *Fletcher v. Fletcher*, 433 P.3d 1148, 1152 (Alaska 2018)).

[9] *Id.* at 184-85.

superior court abuses its discretion if its separation date determination lacks sufficient evidentiary support."[10]

We conclude that the superior court did not abuse its discretion when it narrowed the parties' agreed date — October 2017 — to the specific date of October 1, and that this is consistent with the parties' reasonable expectations as objectively expressed. At an early evidentiary hearing for interim relief, Marie testified that the date of separation was October 7, when Greg moved out of the marital home. She further testified that Greg asked her to leave the business on September 27 (though she said she was "a little hazy on exactly what day"), testifying further that she nonetheless stayed through October "because [she] was making sure [she] left [the business] in good hands."

In short, Marie's own testimony supports findings that Greg intended the parties to separate by late September and that they physically separated in early October. Given the parties' agreement on an October separation date, the superior court did not abuse its discretion by using October 1 as the date that both reflected reality and was consistent with the parties' reasonable expectations in mediation.

## B. Remaining Issues

Marie raises several other issues regarding the superior court's handling of the divorce proceedings: its alleged failure to award her attorney's fees for Greg's discovery violations, its failure to order that the parties file a joint tax return, and its order that the parties share the costs of a tax accountant. We conclude that these arguments lack merit.

---

[10] *Id.* at 185.

### 1. Any claim for attorney's fees preceding the mediation was subsumed in the settlement.

In August 2018 Marie moved to compel Greg's responses to a set of discovery requests pursuant to Alaska Civil Rule 37(a)(2)(B). The court granted the motion in part in September, ordering that if Greg did not provide the discovery by October 4 he would "pay full fees."

Marie contends that these fees remain unpaid and that she is still entitled to them because Greg's discovery violations hampered her claims for interim spousal support and weakened her position at mediation.[11] Greg does not dispute that he missed the pertinent deadline; he argues instead that any prior right to attorney's fees was subsumed in the parties' agreement at mediation that they would each bear their own attorney's fees and costs. We agree.

The mediator's handwritten list of agreed issues does not address attorney's fees. But when the mediator went over the agreement orally and asked whether either party had clarifications or comments, Greg's attorney said, "It's also my understanding, for some reason it dropped off on one of these, but each party's going to bear their own expenses and costs and attorney fees . . . . That's the only clarifications I had." The mediator responded, "Okay," and turned to Marie and her counsel for further comment. They sought clarification of the parties' tax-filing obligations but made no objection to Greg's counsel's "understanding" and "clarification" of the attorney's fees issue.

---

[11] Notwithstanding the alleged discovery violations, Marie acknowledges that she "decided to move forward with settlement despite not having complete documentation" and insists that the settlement reached at mediation should be "upheld as a contractual agreement" with certain corrections. We therefore do not read her discovery arguments as contending that the settlement should be voided on the ground that she lacked information essential to an informed decision, only that she should be awarded attorney's fees.

In Greg's subsequent draft of the settlement agreement, adopted by the court, a provision read: "Each party shall bear their own attorney['s] fees, other professional fees, costs and expenses incurred in this litigation and settlement proceedings." We agree that this reflects the parties' mutual understanding at mediation as objectively expressed. "In determining whether circumstances for avoiding [a property settlement] exist, a party's active negotiation of settlement terms, affirmative participation in clarifying terms on the record, and failure to object despite the opportunity to do so are relevant considerations."[12] And we agree that the broad language of the attorney's fees provision encompasses any fees and costs to which Marie now claims she is entitled. Regardless of whether Marie should have received attorney's fees for discovery violations preceding the mediation, the settlement mooted any such claim.[13]

### 2. The superior court did not abuse its discretion in interpreting its own statements regarding tax returns.

Marie's final challenge is to the superior court's handling of the parties' 2017 tax returns. She contends that the court ordered the parties to file jointly and then failed to enforce its order. She also argues that the court's requirement that the parties share the cost of an accountant conflicted with an earlier order placing that burden on Greg.[14]

---

[12]     *Colton v. Colton*, 244 P.3d 1121, 1129 (Alaska 2010).

[13]     Marie also asks us to award her the money she spent on business valuation and "any additional sanctions and fees [d]eemed appropriate." We reject these arguments for the same reason.

[14]     Neither party argues that the issue of whether to file a joint 2017 return was mooted by the settlement.

The tax issue was first raised at an August 2018 hearing. Recognizing that the divorce trial was being continued past the tax filing deadline, Marie suggested to the court and Greg's attorney that it would be financially advantageous for the couple to file a joint 2017 return. The court observed that "it [made] sense for the parties to file jointly." Greg's attorney said that he would "get [his] client's permission and . . . advise him to do joint filing," then suggested that the parties could "sequester the refund and use it on the property spreadsheet." The court responded: "No, no distribution of the tax refund unless someone files a motion. I'll make a ruling on it. It'll stay in whosever [sic] trust fund until the decision is made on it. But definitely . . . it makes sense to file jointly and it sounds like I'm not hearing any objection from [Greg's attorney]."

In October Marie brought a motion contending that the court had ordered joint filing and Greg had violated the order. The court addressed the motion at a January 2019 hearing. The judge explained that he had listened to the audio of his earlier remarks and concluded that "[i]t was not an order": "What I said was hearing no objection, you guys should probably work this out. It was not an emphatic order." But because the court still believed both parties might benefit from filing jointly, it followed up with a clear order directing Greg to research the issue:

> I am giving an emphatic order today so there's no misunderstanding. [Greg's attorney] will look into this and make a determination as to whether it would be beneficial to both parties to amend the tax returns so that both parties can benefit. If there is a big enough issue regarding the refunds[,] . . . then get them amended and then put it into your trust account to be held until I make a decision regarding distribution.

Marie raised concerns about claimed deductions, and the court told the parties to get "a CPA to look at it." But the court did not address how the accountant would be paid for.

-12-                    *1901*

Marie brought up the issue of the 2017 tax returns again at the final hearing in July 2019. Greg informed the court that he had not yet done the required research; the court told him that it would "like to see a comparison within 30 days." Shortly thereafter Greg submitted a draft order appointing an accountant to review the tax returns and requiring the parties to cooperate with her and share the cost. The court signed the order in August a day after it issued the divorce decree and the findings of fact and conclusions of law incorporating the settlement agreement.

First, we reject Marie's argument that the court misinterpreted its own statements when it concluded that it had not ordered joint filing. "Interpreting an order requires discerning the intent of the issuing court"; the court "in the best position" to do that is "the court that entered the original order."[15] "[W]e review the superior court's interpretation of its own order for abuse of discretion."[16] Here, the superior court listened to the audio recording of its earlier remarks and concluded that, although it had agreed with the sense of Marie's suggestion that the parties file jointly, it did not make it an order. The court's interpretation of its own words is reasonable and therefore not an abuse of discretion.

Marie also argues that the court abused its discretion in its August order when it required the parties to share the cost of the accountant. She argues that this aspect of the August order conflicts with the January order assigning to Greg the responsibility to determine "whether it would be beneficial to both parties to amend the tax returns so that both parties can benefit." But although the court clearly directed Greg to involve an accountant in the process of reviewing the 2017 tax filings, it did not discuss the related costs. The mediation took place a few weeks later and, as discussed

---

[15] *del Rosario v. Clare*, 378 P.3d 380, 383-84 (Alaska 2016).

[16] *Id.*

above, the parties agreed to bear their own fees and costs.  The court's later order that they split the costs of the accountant — retained for the benefit of both of them — was consistent with the parties' agreement that each pay their own way going forward.  The court's cost-sharing order was therefore not an abuse of discretion.

## IV.    CONCLUSION

We REMAND the case to the superior court for further proceedings consistent with this opinion.  We do not retain jurisdiction.