NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

TAMRA FARIS,

    Appellant,

v.

GORDON TAYLOR,

    Appellee.

)
)  Supreme Court No. S-17807
)
)
)  Superior Court No. 1JU-13-00757 CI
)
)  <u>MEMORANDUM OPINION</u>
)     <u>AND JUDGMENT</u>*
)
)  No. 2039 – July 31, 2024
)

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Amy Mead, Judge.

Appearances: Fred W. Triem, Petersburg, for Appellant. Paul H. Grant, Juneau, for Appellee.

Before: Maassen, Chief Justice, and Borghesan, Henderson, and Pate, Justices. [Carney, Justice, not participating.]

## I.    INTRODUCTION

A couple divorced after over 40 years of marriage. The superior court divided the couple's property during divorce proceedings in 2017, and the wife then appealed. We affirmed the superior court in all but one respect, remanding for the court to conduct a new recapture analysis of pension payments received by the wife between the couple's separation and the 2017 trial. After the court conducted its recapture analysis and property distribution on remand the wife has once again appealed. She

---

\*    Entered under Alaska Appellate Rule 214.

challenges numerous points, but concedes she is not appealing the court's recent recapture analysis and corresponding property distribution. Because her remaining challenges are either waived or foreclosed by our decision of her prior appeal, we affirm the superior court in all respects.

## II. FACTS AND PROCEEDINGS

### A. Marriage And Divorce Trial

Tamra Faris and Gordon Taylor married in 1973. Taylor filed for divorce in July 2013. The superior court determined that the couple separated in 2014.[1] In February 2014 the parties reached an agreement regarding the distribution of their property, and the court adopted that agreement as its order. Three days after the order, Faris requested permission to withdraw from the property distribution agreement. The next day the court issued a decree of divorce and distributed the parties' property in accordance with that agreement. The court later vacated that property distribution order and allowed the parties to litigate the contested issues.[2]

The court held a five-day divorce trial between December 2015 and May 2016, and issued an order once again distributing the couple's property in May 2017. Pertinent to this appeal, the court ordered Faris to remit to Taylor payments equivalent to his share of Faris's federal retirement benefit from the date of trial until the court could issue a Qualified Domestic Relations Order (QDRO) that would allow the federal benefit administrator to remit the benefit instead of Faris. We refer to these ordered payments as pre-QDRO payments. Additionally the distribution included a $173,098 credit to Faris's share of the marital estate meant to offset Taylor's lost share of the federal retirement payments that Faris received between the couple's separation date and trial. Faris appealed several aspects of the court's property decision in *Faris I*.[3]

---

[1]    *Faris v. Taylor* (*Faris I*), 444 P.3d 180, 184-85 (Alaska 2019).

[2]    *Id.* at 186.

[3]    *See generally id.*

## B. *Faris I* Appeal And Remand

In her first appeal, Faris contended that the superior court erred in its determination of the couple's separation date, its decision to award half her federal retirement to Taylor, its reliance on a QDRO instead of a lump sum distribution to accomplish the retirement benefit allocation, its distribution of the parties' property, and its credit to her meant to offset pension benefits she received between the date of separation and the divorce trial.[4] In *Faris I* we affirmed the superior court's findings of fact and conclusions of law in all but one respect — its recapture analysis.[5] Recapturing marital assets compensates the other spouse if a party "who control[s] a marital asset during separation . . . dissipate[s] or waste[s] the asset or convert[s] it to non-marital form."[6] We noted that the superior court conducted its recapture analysis without identifying whether and to what extent Faris had dissipated, wasted, or converted those benefits, as opposed to using them to pay ordinary living expenses.[7] We thus vacated the court's recapture decision and final property division order and remanded for the court "to complete a full recapture analysis."[8] We left undisturbed the court's use of QDROs to evenly divide the parties' respective pension benefits, including Faris's federal retirement benefit.[9] We also clarified that once the superior court had conducted a full recapture analysis on remand, it was "authorized to modify the property division order to the extent necessary to effect an equitable division."[10]

---

[4]    *Id.* at 184-87.

[5]    *See id.* at 186-87.

[6]    *Id.* at 186.

[7]    *Id.* at 187.

[8]    *Id.*

[9]    *Id.* at 186.

[10]    *Id.* at 187.

## C. Orders By The Superior Court On Remand

Relying on evidence offered by Faris during the first divorce trial, on remand the superior court issued a corrected full recapture analysis in December 2019 that reduced the credited amount included in Faris's share of the marital estate from $173,098 to $119,108. The court outlined the funds it determined were "subject to recapture" and explained why. The expenditures subject to recapture included legal expenses related to the divorce, gifts to charity and family, travel, and rent beyond Faris's expenses for her primary residence.

In February 2021 the court issued its final property division on remand that incorporated the corrected recapture amount.[11] Each party had proposed revised property distributions. Faris did not argue for a revised property valuation, but rather a revised allocation of the parties' respective retirement accounts. Taylor proposed revising the valuation of some items of property to reflect fluctuations in value of the marital estate since the divorce trial, and due to Faris's withdrawal of retirement funds allocated to him in the original property distribution. The court did not wholly accept either party's proposed distribution, indicating that "over half of the marital estate has been distributed" and that neither party had explained how their proposal would accomplish an equal distribution of the marital estate. The court also concluded that the property valuations in 2017 were "careful and deliberate," unlike valuations proposed in 2020. Finally the court determined that the mix of assets distributed between the parties, and any subsequent appreciation in those asset values, were "on par with each other." The revised marital property distribution resulted in an equalization payment of $51,151.75 owed by Taylor to Faris.[12]

---

[11] A new trial judge was assigned to the case on remand.

[12] The court reduced the equalization payment to offset Faris's prior refusal to pay Taylor the pre-QDRO payment to distribute her federal retirement benefit and

Between the time the court conducted its recapture analysis and issued its final property division on remand, Taylor filed proposed QDROs to distribute each party's retirement benefits in accordance with the original property distribution. Faris objected, asserting that "[n]o QDRO has yet been ordered in this case" and that a QDRO was "the wrong legal tool" to divide the marital estate. Alternatively, she argued that the QDROs "[s]hould have been filed by [Taylor] in May 2017." In April 2020, the court executed and issued the QDROs. When describing Faris's objection to the proposed QDROs, the court observed that Faris did "not give specific objections to the form or content of the proposed QDRO." The court rejected Faris's contention that the use of QDROs had not previously been ordered, citing its 2017 order dividing the marital estate. The court ordered that the parties' retirement would be divided via QDROs, observing that we had affirmed such use of QDROs in *Faris I*.

Faris filed a motion for reconsideration, contending that Taylor's "unexplained and inexcusable delay" in submitting the proposed QDROs prejudiced her. The court denied her motion, noting that Faris was "not challenging the form of the QDROs, [but rather] challenging their use in general." After the court denied her motion for reconsideration, Faris raised objections to the use of QDROs in her motion practice. In these later motions, Faris asserted that implementation of the proposed QDROs was barred by laches and waiver due to the multiple-year delay in their issuance.

Faris now appeals, asserting that the QDROs and pre-QDRO payments constitute an improper form of spousal support, are void, and should be barred under the defenses of laches and waiver.

---

her withdrawal of funds from a retirement account that had been allocated to Taylor. The new equalization payment after factoring in the reallocation, offset, and attorney's fees was $39,531.75.

## III. DISCUSSION

### A. The Law of The Case Doctrine Precludes Faris From Asserting Her Claims Regarding The Issue Of QDROs And Pre-QDRO Payments.

As a preliminary matter, we observe that Faris clarified at oral argument that she was not appealing the superior court's corrected recapture analysis and corresponding property division. Given that Faris has not appealed the superior court's recapture analysis, we do not further address that analysis.[13]

Rather than challenging points at issue following our remand in *Faris I*, Faris attempts to raise several arguments that she contends prevent the superior court from distributing her federal retirement via QDRO. But Faris is barred from raising these arguments that we either addressed and decided in *Faris I* or that she failed to raise in that appeal. In *Faris I* we directly considered whether the court abused its discretion in ordering that Faris's federal retirement benefit would be distributed via QDRO.[14] We concluded that it had not abused its discretion because "the parties presented conflicting evidence on the value of their retirement benefits" and the court can "use a QDRO when the evidence does not permit an accurate valuation of the pensions."[15]

Additionally Faris could have raised her other objections to use of a QDRO to distribute pension benefits in the course of her first appeal. She did not,[16] and her challenges on this point are now subject to the law of the case doctrine. The doctrine generally "prohibits the reconsideration of issues which have been adjudicated

---

[13]     *See Young v. State*, 374 P.3d 395, 412-13 (Alaska 2016) ("We generally refrain from issuing advisory opinions . . . .").

[14]     *Faris I*, 444 P.3d at 186.

[15]     *Id*. We also affirmed the court's distribution of a portion of Faris's retirement benefit to Taylor. *Id*.

[16]     *Id*. at 185-87.

in a previous appeal in the same case."[17] The doctrine applies "not only to issues explicitly addressed and decided in a prior appeal but also to issues 'directly involved with or "necessarily inhering" ' in a prior appellate decision as well as issues that *could have been* part of a prior appeal but were not."[18] We review the superior court's application of the law of the case doctrine for abuse of discretion because it is "a matter of sound judicial policy."[19] But a court's discretion "[i]n the law of the case context" is "strictly bounded:  '[I]ssues previously adjudicated can only be reconsidered where there exist exceptional circumstances presenting a clear error constituting a manifest injustice.' "[20]

Faris points to nothing in the record that would constitute such exceptional circumstances that allow the court to reconsider her QDRO objections now.  Her simple assertion of issues that she argued or could have argued in *Faris I* is not sufficient to meet this standard.[21] Therefore Faris's claims that could have been appealed in *Faris I* are now barred.  This includes any appeal based on the original property distribution,

---

[17]   *Beal v. Beal*, 209 P.3d 1012, 1016 (Alaska 2009) (quoting *State, Com. Fisheries Entry Comm'n v. Carlson*, 65 P.3d 851, 859 n.52 (Alaska 2003)).

[18]   *Id*. at 1017 (emphasis in original) (first quoting *Carlson*, 65 P.3d at 859 n.52; and then citing *id*. at 873-74).

[19]   *Robert A. v. Tatiana D.*, 474 P.3d 651, 655 (Alaska 2020) (quoting *Hallam v. Holland Am. Line, Inc.*, 180 P.3d 955, 958 (Alaska 2008)).

[20]   *Id*. at 656 (second alteration in original) (quoting *State, Com. Fisheries Entry Comm'n v. Carlson*, 270 P.3d 755, 760 (Alaska 2012)).  Additionally, a new superior court judge on remand cannot reconsider decisions affirmed on appeal "without violating the law of the case doctrine." *Beal*, 209 P.3d at 1017.

[21]   *See Beal*, 209 P.3d at 1016.  To the extent that Faris now contends that the superior court's use of QDROs is somehow contrary to federal law, we have recognized that an order contrary to federal law must still be timely appealed. *Cf. Gross v. Wilson*, 424 P.3d 390, 397 (Alaska 2018) (concluding party not entitled to relief under Alaska Civil Rule 60(b)(4) because judgment "might have been voidable if properly challenged" but was not void).

the superior court's use of QDROs, and the court's order that required Faris to make pre-QDRO payments to Taylor.[22]

Faris's attempts to circumvent the law of the case doctrine absent a showing of exceptional circumstances are unpersuasive. For instance, Faris claims that "[a]ll of the issues being presented in this second appeal were raised, briefed, and decided in the superior court *after* remand from the first appeal." (Emphasis in original) Her contention would only possibly apply to the QDROs issued after the first appeal, but not the pre-QDRO payments ordered prior to *Faris I*. For support Faris directs us to our decision in *Robert A. v. Tatiana D.* to advance her proposition that "[t]he doctrine cannot be applied prospectively to a judicial decision that is still years in the future."[23]

But our precedent regarding the law of the case doctrine speaks to issues, not specific orders.[24] We have determined that the law of the case doctrine "prohibits the reconsideration of *issues* which have been adjudicated in a previous appeal in the

---

[22] *See Faris I*, 444 P.3d at 184-87. Faris quotes *Blaufuss v. Ball*, 305 P.3d 281, 285 (Alaska 2013) to support her assertion that the pre-QDRO payment order is void and, therefore, "may be attacked at any time." Her argument seizes on an incomplete reading of *Blaufuss* because her quotation omits two key sentences that cut against her argument:

"But the rule 'is not a substitute for a party failing to file a timely appeal; nor does it allow relitigation of issues that have been resolved by the judgment.' Further, '[a] judgment is not void merely because it is erroneous.' "

*Id*. at 285-86 (alteration in original) (first quoting *Cook v. Cook*, 249 P.3d 1070, 1083 (Alaska 2011); and then quoting 11 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2862 (3d ed. 2012)). And the law of the case doctrine still controls as it also applies to "questionable decisions." *See Carlson*, 270 P.3d at 760.

[23] 474 P.3d at 655.

[24] *See, e.g.*, *Patrick v. Sedwick*, 413 P.2d 169, 173 (Alaska 1966) ("It is a well settled rule of law that whatever *issues* have been decided on a first appeal will not be re-examined on a second appeal in the same case." (emphasis added)); *Wolff v. Arctic Bowl, Inc.*, 560 P.2d 758, 763 (Alaska 1977); *Dieringer v. Martin*, 187 P.3d 468, 474 (Alaska 2008); *Beal*, 209 P.3d at 1016-17.

same case.  Even issues not explicitly discussed in the first appellate opinion, but directly involved with or 'necessarily inhering' in the decision will be considered the law of the case."[25]  In *Beal v. Beal* we affirmed a superior court's enforcement order regarding the modified terms of a prenuptial agreement that was subject to a prior appeal before us.[26]  We upheld the enforcement order because it was "consistent" with the first order, "which became the law of th[e] case" after it was affirmed in the prior appeal.[27]  The basis for Faris's appeal regarding the use of a QDRO here is no different.  In *Faris I* we affirmed the superior court's use of a QDRO to distribute Faris's federal retirement.[28]  The superior court's subsequent execution and issuance of the QDROs themselves merely implement the mechanism approved of in our earlier decision.[29]

### B.    Faris's Claims Not Barred By The Law Of The Case Doctrine Are Waived.

Faris argues on appeal that Taylor's filing proposed QDROs before the superior court on remand was barred by the doctrines of laches and waiver.  But Faris never raised these arguments before the superior court when it considered and decided the issue; she thus failed to preserve the issues for appeal.[30]  Faris pointed to what she claimed was Taylor's significant delay in filing the QDROs, but significant delay in itself is not sufficient to assert laches or waiver even if she had raised these defenses.[31]

---

[25]    *Petrolane Inc. v. Robles*, 154 P.3d 1014, 1026 (Alaska 2007) (emphasis added) (quoting *Wolff*, 560 P.2d at 763).

[26]    209 P.3d at 1018.

[27]    *Id.*

[28]    *Faris I*, 444 P.3d 180, 186 (Alaska 2019).

[29]    *See id.*

[30]    *See Rhodes v. Erion*, 189 P.3d 1051, 1055 (Alaska 2008).

[31]    *See Kollander v. Kollander*, 322 P.3d 897, 903 (Alaska 2014) ("The essence of laches is not merely the lapse of time, but also a lack of diligence in seeking a remedy, or acquiescence in the alleged wrong and prejudice to the defendant.");

At no point did Faris identify how Taylor's delay prejudiced her, how Taylor lacked diligence, or how mere delay constituted clear and unambiguous evidence of Taylor's intent to waive his right to file QDROs.[32]  Faris has thus failed to preserve her laches and waiver claims for appeal.

## IV.  CONCLUSION

For the above reasons we AFFIRM the superior court's order in all respects.

---

*Powers v. United Servs. Auto. Ass'n*, 6 P.3d 294, 299 (Alaska 2000) ("For a waiver to be implied from a party's conduct, that conduct 'must be clear and unambiguous.' " (quoting *Hillman v. Nationwide Mut. Fire Ins. Co.*, 758 P.3d 1248, 1253 (Alaska 1988))).

[32]    For the first time on appeal Faris asserts the delay prejudiced her because "she lost $200,000 and interest," but Faris makes no effort to explain how this is the case or why she failed to bring this to the attention of the superior court.